1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| VIRGIL ARMSTRONG, | NO. |
| Plaintiff, | |
| v. | COMPLAINT |
| DEPUTY C. WHALEN, a Snohomish County Sheriff's Deputy, in his individual, and the marital community comprised thereof; DEPUTY C. DAUGHERTY, a Snohomish County Sheriff's Deputy, in his individual, and the marital community comprised thereof; DEPUTY K. OYETUGA, a Snohomish County Sheriff's Deputy, in his individual capacity, and the marital community comprised thereof; TY TRENARY, Snohomish County Sheriff, in his individual capacity and in his official capacity as Sheriff, Supervisor and Police Maker in his official capacity; and SNOHOMISH COUNTY, a municipal corporation, | *With Jury Demand* |
| Defendants. | |

COMES NOW the plaintiff, Virgil Armstrong, through his attorneys of record, Kannin Law Firm P.S., and hereby presents the following claims:

**JURISDICTION**

COMPLAINT - Page 1

1.

Jurisdiction is founded upon the existence of a federal question.

2.

This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured to the plaintiff by the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983).

3.

Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(3) and (4).

4.

Venue is proper in the Western District of Washington because the acts or omissions which for the basis of the plaintiff's claims occurred in Snohomish County, Washington and the defendants reside in Washington State

5.

At all times relevant to this complaint, plaintiff was an individual residing in Lynnwood, Snohomish County, Washington.

6.

Defendant Snohomish County is a local sovereign government incorporated as a municipal corporation.   As such defendant Snohomish County exists is duly incorporated and organized under the laws of the State of Washington. Defendant Snohomish County was the employer of defendants Whalen, Daugherty, Oyetuga and Trenary at the time of the incidents alleged herein.

7.

COMPLAINT - Page 2

At all times relevant to this complaint, defendants Whalen, Oyetuga and Daugherty were employed as Snohomish County Sheriff's Deputies by defendant Snohomish County. At all times relevant to this complaint, defendant Trenary was employed as the Chief of the Snohomish County Sheriff's Department by defendant Snohomish County.

8.

At all times relevant to this complaint, defendants Whalen, Daugherty, Oyetuga and Trenary were acting within the scope of their employment for defendant Snohomish County and along with defendant Snohomish County were acting under color of law.

9.

Plaintiff sues all individual defendants Whalen, Daugherty, Oyetuga, and Trenary in their individual capacities and municipal defendants Trenary and Snohomish County in their/its official capacities.

**FACTS**

10.

During the early morning hours of June 14, 2015 plaintiff Virgil Armstrong at his home located at 15907 Ash Way #D506 Street in Lynnwood, Washington, 98087.  Earlier in the evening Mr. Armstrong had been studying for his real estate licensing exam. He finished his studies, went to bed and fell asleep in his bedroom.   Later, during the night plaintiff Armstrong woke up in his bed room at his Lynwood apartment. He began to stand up and but was not able to stand. He felt pain. He saw numerous cuts on his body and saw that his arms and legs were bleeding. Unsure of exactly how he had been injured, plaintiff Armstrong again tried to stand up but could not stand on his own two feet. Plaintiff Armstrong saw his legs were bleeding extensively.

11.

Plaintiff Armstrong, not realizing how he had been an injured, knew that he was hurt, that

COMPLAINT - Page 3

his injuries were serious and that he needed medical assistance    Armstrong began to look for his phone.  He made his way from the bedroom to the living room. There, in the living room plaintiff Armstrong saw that his large fish tank had fallen from its shelf onto the floor.  Upon falling the big glass tank had broken into pieces and shards of glass were strewn about on the apartment's living room floor. Plaintiff also saw what looked like blood all around the living room.

12.

Plaintiff Armstrong would eventually learn that sometime during the night, he, plaintiff Armstrong, after falling asleep, got up from his bed while still asleep, and began walking around his apartment.  During my sleepwalking episode Plaintiff Armstrong sleep walked into his large glass fish tank, inadvertently knocked it over. The glass tank fell onto the floor and broke into pieces. Plaintiff Armstrong stumbled and fell onto the large pile of glass debris that was on the floor. Plaintiff was asleep at the time of the accident.  Armstrong's cuts and injuries were caused by the sharp shards of broken tank glass.

13.

Plaintiff continued to look for his phone. He looked in his bedroom and then he looked in living room. After moving around looking for his phone, plaintiff realized he was seriously hurt. Plaintiff began feeling weak and faint. He still could not find his phone, so he went to the front door of his apartment, opened it, and called out for help. Armstrong was hoping one of his neighbors would respond to his calls for help and come to his assistance. Unfortunately, none of his neighbors responded to his calls for help. Armstrong went back inside his apartment and closed the door. Armstrong realized he had lost a significant amount of blood and that he was still bleeding, so he sat down on the living room floor.

14.

As plaintiff Armstrong was sitting on his living room floor, the front door of his

COMPLAINT - Page 4

apartment opened.  At least three Snohomish County Sheriff's deputies came into plaintiff's apartment.  The deputies were defendants Whalen, Daugherty, and Oyetuga.   The defendants had their handguns and tasers drawn out of their holsters and in their hands. Defendants Whalen, Daugherty, and Oyetuga pointed their weapons at plaintiff Armstrong.

15.

Upon seeing the deputies, plaintiff Armstrong believed they had come to his rescue. Plaintiff Armstrong told the defendants he was badly hurt. As he looked at the Defendants, Plaintiff said thank God you are here to help me. Dressed only in boxer shorts plaintiff Armstrong was bleeding from the cuts and wounds all over his body. He was obviously injured. The defendant deputies yelled back at Armstrong and ordered plaintiff Armstrong to get face down onto the floor. Plaintiff Armstrong tried to tell the defendants that the floor was covered with broken glass. At the same time one of the defendants was yelling at Armstrong to get face down into the broken glass that was on the floor, another defendant was demanding that Armstrong answer his questions about whether there was someone else inside the apartment with Armstrong. Plaintiff Armstrong told the defendants there was no one else inside his home with him. Armstrong attempted to tell the defendants that it was too dangerous to lay on the glass covered floor, that the glass on the floor is what had cut him, and the broken glass is what had caused his obvious injuries. The defendants did not listen to plaintiff Armstrong, disregarded Armstrong's answers to their questions.   Next the three defendant deputies Whalen, Daugherty, and Oyetuga shot and fired their Taser weapons at plaintiff Armstrong. The defendants' Taser projectile darts hit plaintiff   Armstrong multiple times. The defendants' Taser darts struck Armstrong's body.  Armstrong felt a painful burning sensation when the defendants' Tasers injected a powerful electrical current into his body.  The current caused Armstrong's body to jerk

COMPLAINT - Page 5

and move involuntarily as the Tasers' electrical current went through him such that his body struck hard against a closet and broke the closet door.  Plaintiff reacted involuntarily, and fell to the floor.  Plaintiff Armstrong had burn marks on his body from where the defendants' Taser darts struck him.   Plaintiff Armstrong yelled out why are you doing this to me? Plaintiff was on the floor convulsing from the electrical shock. This further injured him and cut and worsened his open wounds.

16.

Next the deputies forced Plaintiff forward back onto the floor and handcuffed his wrists behind his back. In the process the defendants caused further injury, pain and suffering to the already seriously injured plaintiff Armstrong.   The defendants put plaintiff Armstrong face down onto a board, strapped him to the board, and removed plaintiff Armstrong from his home. The police loaded the handcuffed and back-boarded Armstrong into a police vehicle and took him away.  On the way to the hospital plaintiff Armstrong asked the defendants to take the handcuffs off his wrists or to at least loosen them, because the defendants' handcuffs were further injuring him and worsening his existing injuries. The defendants denied his request. One of the defendants told plaintiff Armstrong to shut up, used expletives when he told the plaintiff to shut up and told Armstrong not to ask again to have the handcuffs loosened.  During the ride to the hospital the defendants' handcuffs continued to cause plaintiff Armstrong intense pain, caused his further suffering, and exacerbated his obvious injuries. Plaintiff Armstrong again asked the defendants again to please loosen their handcuffs and told them the handcuffs were hurting him and making his injuries worse. One of the defendants responded by laughing at Armstrong, pulled a baggie out of his pocket and took what looked like a little brown stone out of the baggie. Next, he took the little brown stone and put it into plaintiff Armstrong's mouth. Defendant deputy held plaintiff's mouth closed and another defendant put a bag over

COMPLAINT - Page 6

KANNIN LAW FIRM P.S.
119 SW 152nd Street
Burien, WA  98166
(206) 574-0202
john@kanninlaw.com

Armstrong's head. They held his mouth closed and forced the plaintiff to swallow what they had put into his mouth.

17.

Defendants Whalen, Daugherty, and Oyetuga caused plaintiff Armstrong to be transported to the Providence Medical Center Everett hospital emergency room (ER). The ER doctors and staff treated Armstrong for his injuries. ER doctors diagnosed plaintiff Armstrong as having suffered a laceration of left Achilles tendon, laceration of his left thumb with tendon involvement, laceration of left and right lower leg with foreign body, acute blood loss, anemia, laceration of his right foot and hand, acute psychosis, and hemorrhagic shock.

18.

Upon delivering plaintiff Armstrong to the hospital's emergency room the defendants told the hospital staff that plaintiff Armstrong had tried to kill himself and thus he was a danger to himself and others.  The defendants relayed inaccurate and untrue information about the Plaintiff to the hospital medical staff. This misinformation led the hospital's medical staff to take actions that were otherwise unnecessary, and which further caused and contributed to the Plaintiff's harms, injuries, loss of his personal liberty, deprivation of his rights, his pain and suffering.

19.

Defendant Whalen submitted a written report in which he reported that as a result of a mental disorder plaintiff Armstrong presents an imminent likelihood of harm to himself and others, plaintiff Armstrong is gravely disabled, and is a danger to the property of others.

20.

Defendants caused Plaintiff Armstrong to suffer serious, disabling, permanent personal injuries and/or exacerbated his pre-existing injuries, that required the expenditure of money for

COMPLAINT - Page 7

medical treatment and will continue to require the expenditure of money for medical treatment.

21.

Defendants caused Plaintiff Armstrong to suffer serious, disabling, permanent personal injuries and/or exacerbated his pre-existing injuries, that resulted in his lost wages and diminished earning capacity.

22.

The defendant police deputies Whalen, Daugherty, and Oyetuga had no warrant for the arrest of the plaintiff. When the defendants arrived and entered plaintiff's home the plaintiff had not committed a crime, was not a danger to anyone and needed emergency medical assistance. Plaintiff had not been diagnosed with a mental illness that made him a danger to himself or anyone else. Plaintiff had just been in a household accident that severely injured him, and he had called out for help. Defendants, upon finding the injured plaintiff there at his home in need of medical assistance, offered no medical assistance or first aid, and instead used force to take plaintiff into custody and cause him to be admitted into a hospital ward from which plaintiff was not free to leave.

23.

At all times during the events described herein the defendant police deputies were engaged in a joint venture. The individual defendant deputies assisted each other in performing the various actions described herein and lent their physical presence and support, and the authority of their office to each other during said events.

24.

At all times during the events described herein defendant officer Whalen was with defendant deputies Oyetuga and defendant Daugherty during the Taser shooting. Defendant officer Whalen did not stop or attempt to stop the other defendant deputies from shooting

COMPLAINT - Page 8

1   Armstrong with their Taser weapons.  The other defendant deputies, Oyetuga and defendant

2   Daugherty did nothing to stop each other and did nothing to stop defendant Whalen

3                                              25.

4         At all times during the events described herein the defendant police officers Whalen,

5   Oyetuga, and Daugherty acted in concert and had a common plan to that caused the deprivation

6   of Plaintiff's rights and caused him further bodily injury, pain and suffering.

7                                              26.

8         Deployment of the Taser weapon by defendant Daugherty was approved and ordered by

9   the Snohomish County Sheriff's Department. Defendant Trenary was the chief of the defendant

10  Snohomish County Sheriff's Department when the Taser weapon was procured, added to the

11  Snohomish County Sheriff's Department arsenal, and deployed in the Snohomish. Moreover,

12  defendant Trenary was the chief of the Snohomish County Sherriff's department when

13  defendants Daugherty, Oyetuga, and Whalen were approved to use and ordered to carry and use

14  the Taser weapon.

15                                             27.

16        The Taser weapon provided to the individual defendant deputies in this case by

17  defendants Snohomish County Sheriff Trenary came with a Taser International product warning

18  pamphlet. Product warnings are also believed to be issued to law enforcement as they are

19  updated, and the warnings are available from the manufacturer to law enforcement at any time.

20  The pamphlet states that the Taser is not to be deployed simultaneously, continuously, or

21  repeatedly. According to the Taser manufacturer, the user should minimize repeated, continuous,

22  and/or simultaneous exposures. TASER device users should only use the number of electronic

23  control device (ECD) exposures which are objectively reasonable to accomplish lawful

24  objective(s). Repeated, continuous, and/or simultaneous use of TASER devices should be used

25

26  COMPLAINT - Page 9

only when objectively reasonable given the totality of the circumstances and reasonable efforts

should be made to continuously assess the circumstances to minimize the number of ECD

exposures.  Additionally, the manufacturer identifies specific target areas on the human body that

are to be avoided such as the area of a pre-existing injury on the body of a person who is being

targeted. The manufacturer further identifies specific places where its Tasers should not be used

such as in those locations where further injury was likely to occur such as the location of a floor

covered in broken glass where person who is being targeted may fall onto the broken glass or

writhe in glass upon charged with a Taser's electrical voltage. In this case, the individual

defendants repeatedly, continuously, and/or simultaneously fired their Taser weapons upon Mr.

Armstrong in violation of the Taser weapon manufacturer's warnings.

28.

The weapon's manufacturer, Taser International, (now Axon) has identified the standards

for police agencies deploying and using the Taser.   Defendant Snohomish County's written

Taser policy fails to comply with the manufacturer of the weapon, Taser International's

requirements for operating its weapons.  Taser International's deployment and operation

requirements and standards are set forth to ensure that its Taser weapons are not used

unreasonably and to ensure they are not used to inflict unnecessary pain and/or cause

unnecessary injuries or result in illegal application of excessive police force.  Since the

Snohomish County Sheriff's Department's Taser use of force policy failed to comply with the

manufacturer's policy, defendant Snohomish County's policy is an unconstitutional policy,

practice or custom.

29.

COMPLAINT - Page 10

Defendant Sheriff Trenary is believed to be defendant municipal corporation Snohomish County's chief policy maker with regard to implementing the Snohomish County Sheriff's Department's use of force policies, practices and customs. He is further believed to be defendant Snohomish County's representative who ultimately approved, and/or ratified the other defendants' use of force in this case.

30.

As a direct and proximate result of the said acts of the defendants the plaintiff Virgil Armstrong suffered the following injuries and damages:

a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person;

b. Physical pain and suffering requiring the expenditure of money for treatment;

c. Economic and non-economic damages incurred and expected to be incurred, in an amount to be established at trial.

31.

The actions of the defendants   further violated the following clearly established and well-settled federal constitutional rights of Virgil Armstrong:

a.      Freedom from the use of excessive and unreasonable force
         against his person.

b.      Denial of his right to speak freely under the First amendment.

c.      Freedom from the use of excessive, unreasonable and/or unjustified force
         against his person after he was arrested and became a prisoner in the custody of
         the defendants at which time he was also denied access to legal counsel.

d.      Causing plaintiff to be committed into a locked hospital ward based on false
         information and without any review or hearing to determine the necessity of

COMPLAINT - Page 11

1    depriving the plaintiff of his personal liberty.

2

3

4

5    **FIRST CLAIM:  UNDER 42 U.S.C § 1983 AGAINST DEFENDANTS OYETUGA
     WHALEN, AND DAUGHERTY IN THEIR INDIVIDUAL CAPACITIES (EXCESSIVE
6                                    FORCE)**

7                                      32.

8       Plaintiff re-alleges paragraphs 1 through 31 above.

9                                      33.

10   42 U.S.C. § 1983 provides in part:

11   Every person who, under color of any statute, ordinance, regulation, custom, or usage of
     any State or Territory subjects, or causes to be subjected, any person of the United States
12   or other person within the jurisdiction thereof to the deprivation of any rights, privileges,
     or immunities secured by the Constitution and laws shall be liable to the party injured in
13   an action at law, suit at equity or other proper proceeding for redress.

14                                     34.

15      Plaintiff Armstrong had a firmly established right under the Fourth Amendment

16   forbidding unlawful and unreasonable seizure and granting him the rights to be free from

17   physical abuse, excessive force, and the use of force to cause him to suffer as well as a firmly

18   established right to be free from excessive force being used against him to effect an arrest, search

19   or seizure.

20                                     35.

21      Defendants Oyetuga, Whalen and Daugherty breached the aforementioned duty to refrain

22   from depriving plaintiff of his constitutional rights by using unreasonably excessive force to

23   arrest Armstrong, on June 14, 2015 which constituted a violation of plaintiff's clearly-

24   established rights under the Fourth and Fourteenth Amendments to the Constitution of the United

25   States, forbidding unlawful and unreasonable seizure.

26   COMPLAINT - Page 12

36.

Defendants Whalen, Oyetuga and Daugherty were, at the time, performing their duties as deputies for Defendant Snohomish County.

37.

Plaintiff was subjected to physical injury, pain, and fear by the illegal acts of defendants and claims damages, attorney fees, and punitive damages for the injuries set forth herein under 42 U.S.C. § 1983 against defendants Oyetuga, Whalen and Daugherty for violation of his constitutional rights under color of law in an amount to be proven at trial.

38.

The conduct of the defendants was knowing, intentional, and malicious, by reason of which plaintiff is entitled to punitive damages.

**SECOND CLAIM:  UNDER 42 U.S.C § 1983 AGAINST DEFENDANTS OYETUGA WHALEN AND DAUGHERTY IN THEIR INDIVIDUAL CAPACITIES FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**

39.

Plaintiff re-alleges paragraphs 1 through 38 above.

40.

At all times material herein, defendants Oyetuga, Whalen and Daugherty, acting under color of state law, had a duty to refrain from depriving plaintiff Armstrong of his constitutional rights.  Defendants Oyetuga, Whalen and Daugherty breached the duty by forcibly preventing Mr. Armstrong from exercising his clearly-established First Amendment right to speak freely when he tried to tell him he was hurt and needed help.  Instead of letting him talk and instead of helping him they shot him with Tasers.

41.

COMPLAINT - Page 13

Plaintiff Armstrong claims damages for the injuries set forth above under 42 U.S.C. § 1983 against defendants deputies Oyetuga, Whalen and Daugherty for violation of his constitutional rights under color of law in an amount to be proven at trial.

42.

The conduct of the defendants was knowing, intentional, and malicious, by reason of which plaintiff is entitled to punitive damages.

**THIRD CLAIM UNDER 42 U.S.C § 1983 AGAINST DEFENDANTS OYETUGA WHALEN AND DAUGHERTY IN THEIR INDIVIDUAL CAPACITIES FOR VIOLATION OF PLAINTIFF'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS (IN CUSTODY CRUEL AND UNUSUAL PUNISHMENT - EXCESSIVE FORCE AND LOSS OF PERSONL LIBERTY)**

43.

Plaintiff re-alleges paragraphs 1 through 42 above.

44.

Defendants Oyetuga, Whalen and Daugherty breached the aforementioned duty to refrain from depriving plaintiff of his constitutional rights by using unreasonably excessive force on Mr. Armstrong once he became a prisoner in their custody,  which constituted a further violation of plaintiff's clearly-established rights under the Fourth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, using unreasonable force to punish and/or further injure Armstrong, a person detained and arrested by the defendants and  imprisoned by the defendants after they removed him from his home, put him in handcuffs and caused him to be detained in a police vehicle and a  locked hospital ward without telling him why he was arrested, detained and not allowed to leave.

45.

Plaintiff Armstrong claims damages for the injuries set forth above under 42 U.S.C. § 1983 against defendants Oyetuga, Whalen and Daugherty for violation of his constitutional

COMPLAINT - Page 14

KANNIN LAW FIRM P.S.
119 SW 152nd Street
Burien, WA  98166
(206) 574-0202
john@kanninlaw.com

1  rights under color of law in an amount to be proven at trial.

2                                      46.

3      The conduct of the defendants was knowing, intentional, and malicious, by reason of

4  which plaintiff is entitled to punitive damages.

5

6

7  **FOURTH CLAIM - CIVIL RIGHTS   VIOLATION UNDER  42 U.S.C § 1983 –
OFFICIAL CAPACITY CLAIM AGAINST DEFENDANT SHERIFF TY TRENARY
AND MUNICIPAL DEFENDANT SNOHOMISH COUNTY**

8

9                                      47.

10     Plaintiff re-alleges paragraphs 1 through 46 above.

11                                      49.

12     Prior to June 14, 2015 defendant Ty Trenary developed and or maintained polices or

13  customs exhibiting deliberate indifference to the constitutional rights of those people thought to

14  be mentally ill and arrested and/or detained by Snohomish County Sheriff's Deputies prior to any

15  probable cause hearing or trial caused the violation of plaintiff Armstrong's civil rights.

16                                      50.

17     At the time of the incident involving plaintiff Armstrong the defendant Snohomish

18  County's Taser use of force policy was unconstitutional for all the reasons set forth above.

19  Defendant Trenary was reasonable for implementing this policy. At the time of the incident

20  involving plaintiff Armstrong it is believed that it was the policy and, or custom of the

21  Snohomish County Sheriff's Department to inadequately and, or improperly investigate incidents

22  of officer misconduct involving the use of physical force and the use of less than lethal weapons

23  such as the Taser, on detainees, and said acts of misconduct were instead tolerated and/or ratified

24  by defendant Sheriff Trenary, and Snohomish County.

25                                      51.

26  COMPLAINT - Page 15

At the time of the incident involving plaintiff Armstrong it is believed that it was the policy and, or custom of defendant Sheriff Trenary, to inadequately and improperly investigate incidents of officer's misconduct involving the first amendment rights of detainees and said acts of misconduct were instead tolerated and/or ratified by defendant Sheriff Trenary and by Snohomish County.

52.

At the time of the incident involving plaintiff Armstrong it is believed that it was the policy and, or custom of defendant Sheriff Trenary, to inadequately and improperly investigate incidents of officer's misconduct involving excessive force and/or cruel and unusual punishment of detainees and/or individuals thought to be mentally ill and said acts of misconduct were instead tolerated and/or ratified by defendant Sheriff Trenary and by Snohomish County.

53.

At the time of the incident involving plaintiff Armstrong, it is believed that it the policy or custom, and, defendant Sheriff Trenary's policy or custom to inadequately supervise and train Snohomish County Sheriff's Deputies, including defendants Oyetuga, Whalen and Daugherty, thereby failing to adequately discourage further violations on the part of the Snohomish County Sheriff's Department deputies. Defendant Sheriff Trenary did not require appropriate in-service training or retraining of deputies who were known to have engaged in misconduct by using force against detainees such as plaintiff Armstrong.

54.

Because of the above described policies and customs, Snohomish County Sheriff's Deputies, including defendants Oyetuga, Whalen and Daugherty, believed that their actions or inactions would not be properly monitored by supervisory deputies and that the defendant deputies' misconduct would not be investigated or sanctioned but would be tolerated.

55.

COMPLAINT - Page 16

KANNIN LAW FIRM P.S.
119 SW 152nd Street
Burien, WA  98166
(206) 574-0202
john@kanninlaw.com

1    The above described policies and customs demonstrated a deliberate indifference on the

2  part of policymaker defendant Sheriff Trenary and the policymakers of Snohomish County to the

3  constitutional rights of persons detained within Snohomish County prior to their probable cause

4  hearing and were a cause of violations of plaintiff's rights alleged herein.

5                                                    56.

6    The aforementioned policies, customs and practices, whether official, *de facto*, by policy

7  making authority or through failure to adequately train and supervise and the acts and omissions

8  that violate the U.S. Constitution and its First, Fourth and Fourteenth Amendments, alleged

9  herein, were the underlying causes of plaintiff Armstrong's injuries, harms and damages thereto.

10  Plaintiff Armstrong claims damages for the injuries set forth above under 42 U.S.C. § 1983

11  against defendants Snohomish County and Sheriff Trenary for violation of his federal

12  constitutional rights under color of law in an amount to be proven at trial.

13

14  **FIFTH CLAIM: VIOLATION OF TITLE II OF 42 U.S.C. § 12131 -  § 12134 OF THE
     AMERICANS WITH DISABILITIES ACT (ADA), REASONABLE
15  ACCOMMODATION, AGAINST DEFENDANTS OYETUGA WHALEN AND
     DAUGHERTY AND MUNICIPAL CORPORATION SNOHOMISH COUNTY.**

16                                                    57.

17    Plaintiff re-alleges paragraphs 1 through 56 above.

18                                                    58.

19    Subject to the provisions of 42 U.S. Code § 12132, no qualified individual with a

20  disability shall, by reason of such disability, be excluded from participation in or be denied the

21  benefits of the services, programs, or activities of a public entity, or be subjected to

22  discrimination by any such entity.  This law,  the ADA,  applies to all the operations of a public

23  entity police department, including arrests.

24                                                    59.

25    Defendants alleged that plaintiff Armstrong was gravely disabled, that as a result of a

26  COMPLAINT - Page 17

mental disorder plaintiff Armstrong presented an imminent likelihood of harm to himself and others, and that plaintiff Armstrong was a danger to the property of others.

60.

Since the defendants alleged and according to them believed that plaintiff Armstrong was disabled, and thus was a qualified individual in accordance with 42 U.S. Code § 12131 (2), at all times material herein, defendants Oyetuga, Whalen and Daugherty, and their employer defendant Snohomish County had a duty to make reasonable modifications when arresting an individual with a disability or whom they reasonably believe had a disability, and their employer defendant Snohomish County had a duty to ensure its employees make reasonable modifications when arresting an individual with a disability or whom they reasonably believe had a disability.

61.

Defendants Oyetuga, Whalen and Daugherty, failed to   make a reasonable modification when arresting and/or seizing plaintiff Armstrong an individual with a disability or whom they reasonably believe had a disability. and their employer defendant Snohomish County failed to ensure its employees, defendants Oyetuga, Whalen and Daugherty made reasonable modifications when arresting and/or seizing plaintiff Armstrong, they thereby by violated the Americans with Disabilities Act (ADA) 42 U.S.C. § 12131 -  § 12134 and are liable to plaintiff Armstrong.

60.

Plaintiff Armstrong claims damages for the injuries set forth above under 42 U.S.C. § 12131 -  § 12134   against defendants Oyetuga, Whalen, Daugherty and Snohomish County in an amount to be proven at trial.

COMPLAINT - Page 18

**FIFTH CLAIM: VIOLATION OF CIVIL CONSPIRACY AGAINST DEFENDANTS OYETUGA, WHALEN, AND DAUGHERTY**

61.

Plaintiff re-alleges paragraphs 1 through 60 above.

62.

On or about June 14, 2015, and dates after, defendants Oyetuga, Whalen and Daugherty, acting under color of law, combined to act in concert to commit an individual act, or acts, or to commit a lawful act by unlawful means, the principal element of which was an agreement between and among the defendants to inflict a wrong against, or injury upon the plaintiff Virgil Armstrong.  The defendants' acts, and failures to act, occurring from June 14, 2015and following dates, were overt acts that resulted in damage and harm to the plaintiff, including personal injuries, loss of personal liberty, lost wages, pain, suffering, humiliation, frustration, and permanent disability and disfigurement.

63.

Plaintiff Armstrong claims damages for the injuries set forth above against defendants Oyetuga, Whalen and Daugherty.

**SIXTH CLAIM: *RESPONDEAT SUPERIOR* AGAINST DEFENDANT MUNICIPAL CORPORATION SNOHOMISH COUNTY ITS DEFENDANT OFFICERS' CIVIL CONSPIRACY**

64.

Plaintiff re-alleges paragraphs 1 through 63 above.

65.

At all times, relevant herein, the Snohomish County was the employer of the defendants Oyetuga, Whalen, Daugherty, were acting within the scope of their employment with the Snohomish County when they conspired together, the result of which inflicted a wrong or

COMPLAINT - Page 19

1    wrongs against and/or injuries upon the plaintiff.

2                                      66.

3         As a direct and proximate result of the defendants' conspiracy, plaintiff defendants

4    Oyetuga, Whalen, Daugherty was injured and has incurred substantial damages in an amount to

5    be established at trial.

6                                      67.

7         Therefore, Defendant Snohomish County is liable for its employees' civil conspiracies

8    under the theory of *respondeat superior*.

                                        68.

9
                                **JURY DEMAND**
10
11        The plaintiff respectfully requests trial by jury.

12
                                **RELIEF REQUESTED**
13
          WHEREFORE, the Plaintiff Virgil Armstrong prays for judgment in an amount to be
14
     established at trial, including:
15
16        a. Economic damages to plaintiff against the defendants jointly and severally;

17        b. Non-economic damages to plaintiff against the defendants jointly and severally;

18        c. Punitive damages against the defendant deputies Whalen, Oyetuga and Daugherty,

19        pursuant to 42 U.S.C. § 1983;

20        d. Reasonable attorney's fees and costs to the plaintiff under 42 U.S.C. § 1988,

21        42 U.S. C. § 12133 and 29 U.S.C. § 794a;

22        e. Costs of this action to the plaintiff under 42 U.S.C. § 1988, 29 U.S.C. § 794a, and

23        RCW 4.84 other applicable state and federal statutes and rules;

24        f. Such other relief as this court may deem equitable.
25
          DATED this 11th day of June  2018.
26   COMPLAINT - Page 20

1

**KANNIN LAW FIRM P.S.**

2

3      By:   /s/ John Kannin

4            John Kannin, WSBA #27315
             Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26     COMPLAINT - Page 21